[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was returned to court on May 28, 1991. The complaint alleges a breach of an agreement between the parties. The agreement involved engineering services to be performed on behalf of the plaintiff in order to obtain the necessary approvals to develop two parcels of land located in the town of Durham, Connecticut. The facts which gave rise to this dispute are as follows:
Plaintiff is a residential land developer and the owner of two lots in the town of Durham, Connecticut.
Defendant is an engineering firm in Wallingford. Prior to 1985, the plaintiff owned two approved residential lots in a subdivision located in Durham, Connecticut. These lots were the remaining lots in a subdivision which had been approved in 1957. A resubdivision in September of 1965 combined three lots resulting in two lots, Lot 15 and Lot 16 and 17. Lot 16-17 was approximately one acre, the second lot, Lot 15, approximately one-half acre. Both lots were wet, approximately two thirds of each lot was located in designated wetlands. Both lots were partially located in a flood plain area. The lots were subject to regulations contained in Chapter 440 of the General Statutes of the State of Connecticut 1985 Revision § 22a-40 entitled Wetlands and Watercourses. In 1985 the permitted uses and operations in Wetlands and Watercourses as of right included:
 (2) A residential home on a subdivision lot provided the [building] permit has been issued or the subdivision has been approved by a municipal planning, zoning or planning and zoning commission as of the effective date of the promulgation of the municipal CT Page 3225 regulations pursuant to subsection (b) of section 22a-42a or as of July 1, 1974 whichever is earlier.
Since the lots in question were an approved resubdivision approved by the Durham Planning Commission in June of 1965, they enjoyed a right to have constructed thereon a residential home without regard to the regulations contained in Chapter 140 of the General Statutes 1985 Revision.
The plaintiff, the owner of these lots, was aware of the exemption enjoyed by these lots when he negotiated a contract with the defendant in February of 1986. He was also aware of the exemption when he signed a modification of this contract in October of 1986. The February 1986 contract required the defendant to:
 1. Review existing available information related to property topography and boundary subdivision conditions and flood and wetland boundaries.
 2. Review local state and federal requirements for an on-site subsurface sewage disposal system.
 3. Prepare a preliminary design for a subsurface disposal system suitable for submission for approval.
 4. Assist owner in obtaining necessary approvals.
The defendant suggested a modification of this agreement on or about September 29, 1986. Plaintiff agreed to the modification on October 16, 1986. The modification increased the budget from $3000 to $5500 and provided the following additional services:
 Item a) provide Wetland Survey, Mapping and Reports;
 Item b) prepare a final design for a subsurface disposal system suitable for submission for approval; CT Page 3226
The modification anticipated that the requisite services could be performed within forty-five days of the written notice to proceed.
Since plaintiff's signature on the modification dated October 16, 1986 constituted notice to proceed, performance on or before December of 1986 was in the reasonable expectations of the parties.
These expectations did not become a reality. Defendant's Exhibit 2, a letter from The Center for Engineering, Inc.'s project manager, Louis A. Torelli, dated January 9, 1987, addressed to the plaintiff, provided an up-to-date status report which stated:
 1. Mid-State Regional Planning Agency acting on behalf of the town of Durham was reviewing subsurface disposal designs which defendant had submitted per the contract.
 2. The engineers at Midstate informed defendant that subsequent to a satisfactory review of the subsurface disposal system, a special use exemption is required, which entails making application to both Durham Planning and Zoning Commission and the Zoning Board of Appeals of Durham. This is necessary because the proposed design incorporates construction within a flood plain, which is somewhat dissimilar to the wetland issue which was negated by prezoning of the subject properties.
The remaining text of the letter is as follows:
 As you are aware our design efforts and coordination with regulatory agencies have far exceeded original estimates, and, for that reason, we have exceeded our revised budget limit of $5,500.00. We have proceeded in the absence of written authorization beyond the $5,500 limit in CT Page 3227 order to allow for orderly and proper project progression. In an effort to allow this project to go forward in a timely manner, I have enclosed for your use a proposal involving a contract modification which will increase the budget limit for this work to $8,500.00, and feel confident remaining efforts will be completed within that limit.
 Also, it has been brought to my attention that there are a number of outstanding invoices regarding this project which total $5,247.65. I have enclosed copies of these for your use. Subsequent to your execution of the enclosed proposal modification and payment of the attached invoices, we would be pleased to proceed on this project. Our target date for making application to the above mentioned regulatory agencies is February 4, 1987. Your timely attention to this matter will allow the project to go forward without interruptions. I shall look forward to your reply.
The plaintiff did not take too kindly to defendant's suggestion that the budget be increased. He arranged a meeting in January 1987 with the defendant's president, Mr. Brown. This meeting was attended by a mutual friend of both the plaintiff and the defendant. At this meeting, plaintiff insisted that defendant complete his obligation within the budget of $5500. He advised defendant that the work had to be completed on or before June 30, 1987 inasmuch as 1987 legislation, Public Act 87-533 amended § 22a-40 by adding a proviso to subsection (a)(2) that "No residential home shall be permitted as of right pursuant to this subdivision unless the permit was obtained on or before July 1, 1987.
Plaintiff also advised defendant that he would not make any further payments to defendant until defendant completed his work. Defendant's recollection of the January meeting is not clear. The court finds that the meeting took place, that the defendant made these statements but that the defendant's response was not a categorical acceptance of all of the plaintiff's CT Page 3228 proposals. The court is satisfied, however, that plaintiff informed defendant of the consequences of Public Act 87-533.
The defendant continued to work on the project and submitted plans for both lots for engineered subsurfaced disposal systems to the town of Durham, specifically to Mr. Milardo, a sanitarian, on January 8, 1987. Mr. Milardo rejected these plans on or about January 12, 1987, recommending denial of the system designed for Lot 15 (two bedrooms) on or about January 12, 1987. Milardo's memo to the Director of Health with regard to Lot 16-17
(three bedrooms) is dated January 20, 1987. In this memo he notes in Comment 13,
 "The usable area of this lot appears to be too confined for development. It does not appear possible that all Connecticut public health code requirements can be met."
Defendant submitted revised plans for these engineered systems to Mr. Milardo on February 3, 1987. These designs were not approved by him. Defendant responded to Mr. Milardo's February 17, 1987 comments on the revised plans on February 25, 1987, Defendant's Exhibit 5, requesting an opportunity to meet with Mr. Milardo before submission of final plans. No evidence was offered that such a meeting took place. The defendant submitted no further plans. Mr. Milardo testified it would be extremely difficult to develop an approvable engineered subsurfaced disposal system for these lots. He also testified that on occasion difficult lots required three or four submissions before approval would be granted.
The defendant continued to work on the project after February 25, 1987, submitting invoices to the plaintiff dated February 28, 1987, April 30, 1987, June 30, 1987, and April 30, 1988.
On June 27, 1987, defendant wrote to plaintiff (Exh. 8) referring to a prior letter of January 9, 1987 (Exh. 2) wherein defendant stated that because design efforts and coordination with regulatory agencies have far exceeded the revised budget of $5500 it was proposing a new budget of $8500. The text of this letter has previously been noted in this memorandum. The thrust of the letter dated June 27, 1987 was that no further work will be done on this project until all outstanding invoices are paid and a revised executed contract for the remainder of the work is CT Page 3229 executed. Plaintiff did not respond to this letter or to the invoices of June 30, 1987 or April 30, 1988.
On May 18, 1988, the defendant wrote to the plaintiff advising him that "because the Connecticut General Assembly [apparently referring to Public Act 87-533 sec. (a)(2)] has passed legislation specifically prohibiting any residential house from being built in a wetlands area unless a permit was obtained on or before June 1, 1987.", the plot plans prepared by the Center for Engineering regarding Lot 16-17 and Lot 15, dated 11-20-86, are rendered obsolete by this legislation. The letter described additional efforts by defendant to determine whether it was feasible to combine the two lots into one lot and to design a subsurface sewage disposal system that meets current applicable regulations. Defendant concluded that it determined that a modern septic tank system on this site is not feasible.
On May 14, 1991, the plaintiff filed this complaint against the defendants. In the complaint the plaintiff alleges that the defendant agreed to perform engineering services for the plaintiff and obtain the necessary approvals to develop two parcels of land for residential purposes in Durham, Connecticut, and that the defendant neglected to finish said engineering services required by the contract. The defendant denied these allegations and filed a special defense and counterclaim. The counterclaim charged the plaintiff with failure to pay his bills when due, failure to authorize additional work and refusal to accept defendant's advice. Defendant alleged that these failures were the substantial cause of the plaintiff's inability to obtain approval from the land use authorities of the town of Durham. In the counterclaim defendant alleged that the sum of $6,202.65 is due and owing from the plaintiff to the defendant. The defendant also made claims for interest and attorney's fees in his counterclaim.
The plaintiff denied defendant's special defense and filed an answer to defendant's counterclaim denying all of its essential allegations.
At the trial of the case, the plaintiff appeared to be putting forth the theory that the defendant obligated itself to obtain approval of the designs for an engineered subsurface sanitary sewage disposal system from the Durham authorities. In his brief, however, plaintiff withdrew this theory candidly admitting that he has always acknowledged that the final CT Page 3230 approvals would be with the town of Durham or with the courts and the legal process in the event that the town of Durham failed to act in accordance with its own regulations or state statutes or regulations. The court finds this admission to be consistent with its own interpretation of the contract.
Plaintiff also advanced the theory that obtaining approval of the designs for the engineered subsurface sanitary sewer system prior to the June 30, 1987 deadline was the only prerequisite to obtaining building permits for the development of the two building lots. The court finds that this theory is controverted by other evidence. Defendant's Exhibit 2 discusses a special use exemption requiring an application to both the Durham Planning Zoning Commission and the Zoning Board of Appeals of Durham because the proposed design incorporates construction within a flood plain which is dissimilar to the wetlands issue. Exhibits 6, 7, 14, 15, 17 and 18 also indicate a 100-year flood boundary affecting these lots. Exhibit 10 notes that special flood plain hazard area regulations affect Lots 15, 16 and 17.
The initial proposal from the defendant required the defendant to do a number of things within a given time frame. The court finds satisfactory compliance by the defendant although not within the anticipated time frame. The court can find no material damage to the plaintiff resulting from defendant's failure to meet the designated time frame in the initial proposal.
The modification dated September 29, 1986 signed by the plaintiff on October 16, 1986 anticipated performance within forty-five days of October 16, 1986. Defendant obtained the Wetlands Survey and Mapping and Reports on or about October 6, 1986. The defendant did not prepare a final design for subsurface disposal systems suitable for submission and approval as the contract required and the parties contemplated. Defendant's Exhibit 2 dated January 9, 1987 explained the reason for the delay and asked for a contract budget increase. The court finds that the plaintiff demurred to the budget increase and informed the defendant of the cutoff date for his exemption impliedly waiving the forty-five-day period provided in the contract. This cutoff date as provided by Public Act 87-533 was June 30, 1987. The evidence indicates that the defendant continued its work on the project and contemplated submitting a final plan after meeting with Mr. Milardo sometime after February CT Page 3231 27, 1987. Defendant did this despite previously advising the defendant in Exhibit 2 that it required a budget increase and found that most of its invoices remained unpaid.
The plaintiff was entitled to assume that a final submission would be made prior to June 30, 1987. Defendant had reached a decision, however, not to proceed relying on the fact that its proposed third contract was not executed and its invoices had not been paid. Defendant's Exhibit 8. The court finds that defendant's decision to delay was unjustified by the existing contract or the discussion between the parties which took place on January 15, 1987. Accordingly, the court finds a breach of the modified contract by defendant. The court further finds that the defendant failed to sustain its burden of proof on its special defense and counterclaim.
Plaintiff offered testimony from the plaintiff himself to prove his damage. Plaintiff testified that he was an experienced residential contractor and landowner in Durham, Connecticut. He also testified that he had sold many homes in Durham, that he is and was at all times the owner of the lots in question, Lots 15, 16 and 17, located in the Linmar Heights subdivision. He had owned this property since 1954 and obtained the approval for subdivision of this property in 1957 and obtained reapproval as a subdivision for Lots 15, 16 and 17 on September 1, 1965. Previously, he had obtained a variance for Lot 15 in September, 1963. The variance permitted him to build on a one-half acre lot although the zoning for the area was one acre. Plaintiff testified that he had built 50 homes in the Linmar subdivision and perhaps had completed 300 homes over a forty-year period. He testified he was familiar with the market value of residential building lots in the town of Durham, Connecticut, that in 1986 he sold a raised ranch on a one-acre lot in Durham for $130,000 allocating between $65,000 and $70,000 to the land. He also testified that in 1987 he sold a colonial home on a one-acre lot for $197,000 allocating $75,000 to the land. Plaintiff then testified that the one-acre lot, 16-17, was worth $75,000, and the one-half acre lot, Lot #15, was worth $30,000 in June of 1987 and prior to June 30, 1987; that subsequent to June 30, 1987, the lots were worthless.
Plaintiff's testimony and opinion of value are predicated on his assumption that it was reasonably probable that the town of Durham acting through its sanitarian, Mr. Milardo, would approve a design for an engineered sanitary sewage disposal CT Page 3232 system on Lot 15 and Lot 16-17 prior to June 30, 1987. The burden of proof on this issue was on the plaintiff, and the court concludes from the evidence that the plaintiff failed to sustain the burden of proof on this issue.
Based upon all of the evidence that was submitted to the court, the court concludes that these two lots were located in the wetlands; approximately two-thirds of each lot was subject to the wetlands regulations. The lots required fill and were also in a flood plain and subject to flood hazard regulations. Lot 15, the small lot, contained insufficient suitable area for a primary or secondary leaching area. Mr. Milardo testified that both of these lots were extremely difficult and would be extremely difficult to develop an approvable engineered system for these lots and that the usable area of Lot 16-17 appeared to be too confined for development, concluding that it did not appear possible that all of the Connecticut Public Health Code Requirements can be met for Lot 16-17. On the basis of these facts which the court found, the court concludes that it was highly unlikely that reasonable design efforts to prepare final plans for an engineered subsurface sanitary sewage disposal system would be successful.
The court further finds that the defendant did not make a reasonable effort to prepare a final design for submission and that the plaintiff is entitled to have his payments restored to him. Judgment may enter for the plaintiff on his complaint in the amount of $2,081.23 plus interest from June 30, 1987 and costs. Judgment may enter for the plaintiff on the counterclaim.
Dorsey, J. State Trial Referee